UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RAELYNE CASTONIA,

             Plaintiff,                                Case No. 1:13-CV-1240

v.                                              HON. GORDON J. QUIST

COMMISSIONER OF SOCIAL SECURITY,

             Defendant.

_____/

**OPINION**

This is an action pursuant to Section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

**Background**

Plaintiff, Raelyne Castonia, was 55 years of age on her alleged disability onset date. She had previously worked as a final finish operator. Plaintiff filed an application for DIB and Supplemental Social Security Income (SSI) on July 27, 2010, alleging she had been disabled since October 30, 2009. (Dkt. #7-2 at Page ID#44.) The SSI claim was technically denied and was not pursued further. (*Id.*) The DIB claim was denied on October 29, 2010, and Plaintiff thereafter requested a

hearing.  (*Id.*)  Plaintiff appeared and testified at a hearing before Administrative Law Judge (ALJ)

Michael S. Condon on March 29, 2012.  (*Id.*)  In a written decision dated April 27, 2012, the ALJ

determined that Plaintiff was not disabled.  (*Id.* at Page ID##44-52.)  The Appeals Council declined

to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.  (*Id.*

at Page ID#22).  Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of the ALJ's decision.

## Standard of Review

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the

record made in the administrative hearing process.  *See Willbanks v. Sec'y of Health and Human*

*Servs.*, 847 F.2d 301, 303 (6th Cir. 1988).  The scope of judicial review in a social security case is

limited to determining whether the Commissioner applied the proper legal standards in making her

decision and whether there exists in the record substantial evidence supporting that decision.  *See*

*Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or

decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the

Commissioner who is charged with finding the facts relevant to an application for disability benefits,

and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C.

§ 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance.  *See Cohen v.*

*Sec'y of Dep't of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted).

It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir.

1993).  In determining the substantiality of the evidence, the Court must consider the evidence on

the record as a whole and take into account whatever in the record fairly detracts from its weight.

*See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence

of a zone within which the decision maker can properly rule either way, without judicial

interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This

standard affords to the administrative decision maker considerable latitude, and indicates that a

decision supported by substantial evidence will not be reversed simply because the evidence could

have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

### Analysis of the ALJ's decision

The social security regulations articulate a five-step sequential process for evaluating

disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]  If the Commissioner can make a

dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§

404.1520(a), 416.920(a).

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and

she can satisfy her burden by demonstrating that her impairments are so severe that she is unable

to perform her previous work, and cannot, considering her age, education, and work experience,

perform any other substantial gainful employment existing in significant numbers in the national

---

[1] 1.   An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2.   An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3.   If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4.   If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5.   If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

economy.  *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.  While the burden of proof shifts

to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the

procedure, the point at which her residual functioning capacity (RFC) is determined.  *See Bowen v.*

*Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir.

1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from fibromyalgia and degenerative disc disease

of the lumbar spine, which were "severe" impairments, but which neither met nor equaled the

criteria of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404,

Subpart P, Appendix 1.  (*Id.* at Page ID#46-48).  With respect to Plaintiff's RFC, the ALJ

determined that Plaintiff retained the capacity to perform light work, subject to the following

limitations: (1) she could only occasionally stoop, kneel, crouch, crawl, reach over the shoulder and

climb ramps and stairs; (2) she could never climb ladders, ropes, or scaffolds; and (3) she should not

be exposed to temperature extremes.  (*Id.* at Page ID#48.)

The ALJ found that Plaintiff could not perform her past relevant work at which point the

burden of proof shifted to the Commissioner to establish by substantial evidence that a significant

number of jobs exist in the national economy which Plaintiff could perform, her limitations

notwithstanding.  *See Richardson*, 735 F.2d at 964.  While the ALJ is not required to question a

vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the

vocational qualifications to perform specific jobs" is needed to meet the burden.  *O'Banner v. Sec'y*

*of Health and Human Servs.*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added).  This standard

requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific

jobs in the national economy.  *See Richardson*, 735 F.2d at 964.  Accordingly, ALJs routinely

question vocational experts in an attempt to determine whether there exist a significant number of

jobs which a particular claimant can perform, her limitations notwithstanding.  Such was the case

here as the ALJ questioned a vocational expert.

The vocational expert asserted that there existed approximately 6,000 jobs in the state of

Michigan, and 110,000 nationally, which an individual with Plaintiff's RFC could perform, such

limitations notwithstanding.  (*Id.* at Page ID#51.)  This represents a significant number of jobs.  *See*

*Born v. Sec'y of Health and Human Servs.*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837

F.2d 272, 274 (6th Cir. 1988); *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir.

2006).  The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

**1.     Dr. Parrett's Opinion**

Plaintiff argues that the ALJ erred in failing to give any weight to the opinion of her treating

physician, Dr. Parrett.  In her sworn statement, Dr. Parrett stated that fibromyalgia had been

Plaintiff's "biggest trouble" over the previous two years, that Plaintiff was an "honest, truthful

person," and that Plaintiff wanted to work but was unable to because of her pain.  (Dkt. #8-3 at Page

ID##297-98.)  When asked whether Plaintiff could work, Dr. Parrett responded: "mostly what I have

is her word, and she says she can't work 8 hours a day — she can't even work 2 or 3 hours — and

I would believe her on that."  (*Id.* at Page ID##298-99.)

The ALJ refused to give any weight to Dr. Parrett's statement, explaining:

> [T]he doctor listened to the claimant's complaints and concluded that the claimant was not
> dishonest.  This statement provided no substantive information other than she might have
> fibromyalgia and might have some limitations, but she could not really tell since
> fibromyalgia is a diagnosis of exclusion.  The undersigned also notes that the claimant
> refused pain medication.

(Dkt. #7-2 at Page ID#50.)  The ALJ went on to summarize the medical records from Dr. Parrett and

concluded that the objective findings in those records did not provide a basis for finding limitations

greater than those in the ALJ's decision.  (*Id.*)

A treating physician's medical opinions are entitled to great weight in evaluating a plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). A medical opinion is one "that reflect[s] judgments about the nature and severity of [a claimant's] impairments," including symptoms, diagnosis and prognosis, and restrictions. 20 C.F.R. § 404.1527 (a)(2). "Opinions of some issues . . . are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive to a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(e). A physician's opinion on a plaintiff's credibility "addresses one of the issues reserved to the Commissioner and therefore is not a medical opinion requiring consideration. Credibility determinations with respect to subjective complaints of pain rest with the ALJ." *Allen v. Comm'r*, 561 F.3d 646, 652 (6th Cir. 2009) (internal quotation marks and brackets omitted).

The only medical opinion that Dr. Parrett provided was that Plaintiff suffered from fibromyalgia. However, she offered no details as to the nature and severity of that condition or how it limited Plaintiff's abilities. Thus, Dr. Parrett's opinion was not inconsistent with the ALJ's finding that Plaintiff suffered from fibromyalgia but retained the RFC to perform some light work. *See Edwards v. Comm'r*, 97 F. App'x 567, 570 (6th Cir. 2004) (rejecting the plaintiff's argument that the ALJ minimized the treating physicians' opinions diagnosing fibromyalgia where those opinions did not indicate that the plaintiff was prevented from performing light work). The remainder of Dr. Parrett's opinion—where she opined on Plaintiff's credibility—does not constitute a medical opinion because it addressed issues reserved to the Commissioner. *See Dunlap v. Comm'r*, 509 F. App'x 472, 476 (6th Cir. 2012) (concluding that a doctor's statement that the plaintiff had lower back pain and could not work was not a medical opinion); *Allen*, 561 F.3d at 652 (affirming ALJ's decision rejecting treating physician's opinion to the extent that it opined on the plaintiff's credibility).

6

Plaintiff's reliance on *Gayheart v. Commissioner of Social Security*, 710 F.3d 365 (6th Cir. 2013), which discussed how to weigh medical evidence from treating sources, is misplaced. As discussed, Dr. Parrett did not offer a medical opinion concerning the limitations resulting from Plaintiff's fibromyalgia. Thus, the ALJ did not err in adopting the assessment from Dr. Sheill, who performed a consultative examination, that Plaintiff could perform light manual labor. Similarly, the Sixth Circuit's decision in *Rogers v. Commissioner of Social Security*, F.3d 234 (6th Cir. 2007), has little bearing here, as that case addressed an ALJ's decision that dismissed medically-accepted and recognized signs of fibromyalgia. *Id.* at 243-46. In this case, the ALJ discussed the relevant evidence, and concluded that Plaintiff suffered from a severe impairment due to fibromyalgia.

Finally, Plaintiff appears to argue that the ALJ may have dismissed Dr. Parrett's opinion because the ALJ incorrectly applied SSR 12-2p. The portion of the regulation that Plaintiff discusses concerns how to determine whether a claimant suffers from fibromyalgia. As discussed, the ALJ found that Plaintiff did suffer from the "severe" impairment of fibromyalgia, and then proceeded to consider the effects of that impairment on Plaintiff's ability to perform work. Contrary to Plaintiff's suggestion, "a diagnosis of fibromyalgia does not equate to a finding of disability or an entitlement to benefits." *Stankowski v. Astrue*, 532 F. App'x 614, 619 (6th Cir. 2013). *See also McKenzie v. Comm'r*, No. 99-3400, 2000 WL 687680, at *5 (6th Cir. May 19, 2000) ("[T]he mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual."). The ALJ determined that Plaintiff suffered from fibromyalgia, and then analyzed the medical evidence to determine Plaintiff's RFC. Accordingly, Plaintiff has not demonstrated that the ALJ's analysis of SSR 12-2p resulted in any error.

For the reasons discussed, the Court finds that the ALJ did not err in assessing Dr. Parrett's opinion.

### 2.   Chiropractor Evidence

Plaintiff argues that the ALJ erred by not considering the records from her chiropractor because those records shed light upon Plaintiff's level of pain.  This argument is unfounded.  The ALJ discussed the records from White Lake Chiropractic, stating that those records demonstrated complaints of pain in Plaintiff's neck and shoulders, as well as headaches.  (*Id.* at Page ID#48.)  As Plaintiff acknowledges, a chiropractor is not an acceptable medical source. *See Walters v. Comm'r*, 127 F.3d 525, 530 (6th Cir. 1997).  Rather, evidence from a chiropractor is considered evidence from other sources, which may be used to show how an impairment affects a claimant's ability to work.  20 C.F.R. § 404.1513(d).  The ALJ took into account the chiropractor's evidence and used it, along with the other evidence, to determine Plaintiff's RFC.  Accordingly, the ALJ did not err in his consideration of the evidence from Plaintiff's chiropractor.

### 3.   Credibility

The ALJ found that Plaintiff exaggerated her problems, and that her allegations of disabling symptoms and limitations were not fully credible.  (*Id.* at Page ID##49-50.)  Plaintiff argues that the ALJ erred in assessing her credibility because he relied on the fact that she had not undergone back surgery and he failed to consider her "sterling" work record.

In assessing Plaintiff's credibility, the ALJ discussed Plaintiff's activities of daily living, which included taking walks and riding her bicycle.  (*Id.* at Page ID#49.)  He also noted that Plaintiff's examination findings supported the conclusion that she could perform light manual labor.  (*Id.*)  Finally, he  noted that Plaintiff had not undergone back surgery or taken any pain medication for the month prior to the hearing.  (*Id.* at Page ID#50.)

"[A]n ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility." *Cruse v. Comm'r*, 502 F.3d 532, 542 (6th Cir. 2007).  "It is the ALJ's function to determine

credibility issues, and the claimant's work history is only one of the many factors that the ALJ can consider in making his credibility determination." *Barney v. Comm'r*, No. 1:08-cv-1225, 2010 WL 1027877, at *4 (W.D. Mich. Jan. 20, 2010) (internal citation omitted). Although a refusal to undergo surgery cannot be the basis for a denial of benefits unless the surgery would restore the claimant's ability to work, *see* 20 C.F.R. § 404.1530(a)-(b), a claimant's "conservative treatment approach suggests the absence of a disabling condition." *Branon v. Comm'r*, 539 F. App'x 675, 678 (6th Cir. 2013).

In this case, the ALJ properly considered Plaintiff's conservative treatment of her impairments as one factor in determining her limitations, and whether she had exaggerated in her description of those limitations. He also considered Plaintiff's work record, including her decision to take early retirement and quit doing wedding work due to the emotional stress and physical labor involved in those jobs. (*Id.* at Page ID#46.) Those factors were considered in conjunction with Plaintiff's activities of daily living and objective medical evidence. The Court finds no error in the ALJ's analysis.

**4.      Post-hearing evidence**

As part of her request to obtain review of the ALJ's decision, Plaintiff submitted to the Appeals Council additional evidence that was not submitted to the ALJ. (*Id.* at Page ID#1-2.) The Appeals Council received the evidence into the record and considered it before declining to review the ALJ's determination. (*Id.*) This Court, however, is precluded from considering such material.

In *Cline v. Commissioner of Social Security*, 96 F.3d 146 (6th Cir. 1996), the Sixth Circuit explained that where the Appeals Council considers new evidence that was not before the ALJ, but nonetheless declines to review the ALJ's determination, the district court cannot consider such evidence when adjudicating the claimant's appeal of the ALJ's decision. *Id.* at 148. However, if Plaintiff can demonstrate that the evidence is new and material, and that good cause existed for not

presenting it in the prior proceeding, the Court can remand the case for further proceedings to consider the new evidence. *Id.* To satisfy the materiality requirement, Plaintiff must show that there is a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Hollon ex rel. Hollon v. Comm'r*, 447 F.3d 477, 483 (6th Cir. 2006). Plaintiff bears the burden of making such showings. *See id.*

Plaintiff has failed to even suggest how the evidence that she submitted to the Appeals Council— which consists of records from examinations conducted by Drs. Eyke and Wilson after the ALJ issued his decision—is material. The records discuss Plaintiff's present condition at the time of the examinations, and thus provide no insight into the period that was the subject of the ALJ's analysis. *See Mingus v. Comm'r*, No. 98-6720, 1999 WL 644341, at *5 (6th Cir. Aug. 19, 1999) (finding that evidence from an evaluation conducted after the ALJ's decision was not relevant to the period before ALJ's decision). Moreover, the findings from the examination did not contradict the ALJ's findings.

Plaintiff has failed to demonstrate that the new evidence is material. Thus, the Court will not remand for consideration of that evidence.

### Conclusion

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.


Dated: March 31, 2015                                    /s/ Gordon J. Quist
                                                  GORDON J. QUIST
                                                  UNITED STATES DISTRICT JUDGE